OPINION OF THE COURT
Alvin R. Ruskin, J.
In this action for a declaratory judgment and CPLR article 78 proceeding (consolidated by consent of the parties), plaintiff challenges the legality and validity of a July 23, 1981 order of the defendants Richard Berman, Commissioner of the New York State Division of Housing and Community Renewal, Robert Herman, State Rent Administrator and Assistant Commissioner, and the New York State Division of Housing and Community Renewal and Office of Rent Administration, affecting housing accommodations in the City of Mount Vernon, effective June 19, 1981. The said order under attack is known as supplement No. 5 to operational bulletin No. 110.
*892 The material facts now before the court appear to be undisputed, and both sides move for summary judgment contending that only issues of law are involved and that no triable issues are presented which require a trial.
Plaintiff is the owner and landlord of a certain apartment house known as and located at 300 Hayward Avenue and 630 Gramatan Avenue, Mount Vernon, New York, which, as of July 1, 1981, consisted of approximately 127 rent-controlled tenants residing in the premises.
Subdivisions 2 and 2-a of section 12 of the Emergency Housing Rent Control Law (L 1946, ch 274, as amd) provide that under certain circumstances a local governing body of a city may adopt a resolution to decontrol all or any specified class of housing accommodations in such city. Subdivision 2-a of section 12 also provides that upon such decontrol, or the filing of a resolution resulting in decontrol, such decontrol shall take place if the landlord and tenant execute a written lease for a term not less than two years, in which case the landlord is entitled upon the execution of such lease to a rent increase of 15% upon the effective date of the lease for the first year and a further rent increase of 5% for the second year.
After a public hearing and a study of the old rent control law “upon the housing stock, tax base and quality of life in the City of Mount Vernon” and “upon a finding that decontrol [was] warranted after a public hearing” and “after lengthy deliberation and study” wherein it was found, inter alia, that the maximum legal rents of housing accommodations under the old rent control law were substantially lower than the legal regulated rents permitted for all other apartments which were controlled; that the maximum legal rents permitted under the old rent control law were generally well below the fair market value of the housing accommodations to which they applied and that apartment owners were being unfairly denied fair rentals while a small minority of tenants continue to receive the benefit of artificially reduced rents, the Mount Vernon City Council enacted a resolution which decontrolled the housing accommodations in Mount Vernon controlled by the old rent control and abolished said old law upon its finding that such abolition was warranted and necessary to *893 promote the best interests of the city. This resolution was adopted on June 16, 1981, effective July 1, 1981. This resolution further provided that in order to protect the tenants then under the Emergency Housing Rent Control Law as the result of such decontrol and, in keeping with section 12 thereof, a tenant must be offered a two-year lease which could only provide for a maximum of 15% increase in rent for the first year and a 5% increase in the second year “should the tenant choose to execute such lease providing him with this protection”.
The record further indicates that following the enactment of said resolution by the Mount Vernon City Council and, in keeping with the provisions of subdivision 2-a of section 12 of the Emergency Housing Rent Control Law plaintiff, landlord and 108 of its tenants executed two-year leases, commencing August 1,1981 which contained a 15% rent increase for one year effective August 1, 1981 and a 5% increase effective August 1, 1982 for the second year. Defendants have made no factual or evidentiary showing in this record that these leases were not proper or that they did not contain a provision that plaintiff would maintain the same services and equipment required by the Emergency Housing Rent Control Law or that plaintiff has not in fact maintained the same services and equipment.
The following is an all important fact which must be considered in the resolution of the issues which have been presented in this controversy. Back in November, 1980, plaintiff, relying upon the Emergency Housing Rent Control Law and the regulations, orders and operational bulletins promulgated thereunder, duly filed for and received a general “hardship” or “compensatory” rent increase for the rent-controlled tenants of the subject premises under subdivision 8 of section 33 of the New York State Rent and Eviction Regulations (9 NYCRR 2102.3 [b] [8]). This application for a “hardship” increase was granted by defendants in November, 1980, effective October 1,1980, to the extent of an 18% increase, and plaintiff has legally been collecting same since October, 1980 until the issuance by defendants of the said supplement No. 5 to operational bulletin No. 110 which is the subject of this litigation. By this supplement No. 5 defendants have taken the position that plain *894 tiff is not entitled to receive the 15% and 5% increases provided for in the said 108 two-year leases which were executed by the tenants as the result of the said decontrol resolution of the Mount Vernon City Council and subdivision 2-a of section 12 of the Emergency Housing Rent Control Law so long as it continues to receive the said “hardship” or “compensatory” increase awarded back in November, 1980. In other words, supplement No. 5 provides that plaintiff cannot have both the “hardship” or “compensatory” increase (which commenced Oct. 1, 1980) and the 15% and 5% increases provided for in the two-year decontrolled leases which commenced August 1, 1981. Defendants contend that if plaintiff collects the 15% and 5% increases as provided in the new two-year leases it must exclude the subdivision 8 of section 33 (9 NYCRR 2102.3 [b] [8]) “hardship” increase granted in November, 1980, and that such 15% and 5% increases must be based on the maximum rent as it existed prior to October 1, 1980 and cannot be based on the rents which were increased as the result of the said hardship application.
The court is of the view that defendants’ position is untenable and cannot be sustained. The record indicates that defendants were aware prior to the adoption of the June 16, 1981 decontrol resolution by the City of Mount Vernon that the application to abolish rent control in that city was pending and it is reasonable to assume that there was a strong possibility that it would be enacted. Nevertheless, defendants did nothing, and it was not until after the enactment of the resolution on June 16,1981, and after plaintiff and the said 108 tenants had already executed their new two-year leases, and after the effective date of the Mount Vernon decontrol resolution, that defendants did on July 23, 1981 issue supplement No. 5, effective retroactively as of June 19, 1981. While it is true that the said “hardship” or “compensatory” increase awarded plaintiff effective October 1, 1980 provided under subdivision 8 of section 33 of the New York State Rent and Eviction Regulations (9 NYCRR 2102.3 [b] [8]) that plaintiff landlord could not apply for another “hardship” or “compensatory” increase because of “unavoidable increased costs of operation” until after the expiration of two years, never *895 theless, the right of the plaintiff in this case to obtain the 15% and 5% rent increases was not predicated upon any-claimed “hardship” or “unavoidable increased costs of operation”, but rather was based upon the fact that the City of Mount Vernon had abolished rent control in its city effective July 1, 1981. As a result of this decontrol resolution by the Council of the City of Mount Vernon, plaintiff was entitled, as a matter of right, to receive the 15% and 5% rent increases so long as it and the tenants executed proper two-year leases. Thus, upon the undisputed execution of these 108 leases, the premises were immediately decontrolled as to these tenants on July 1,1981 and defendants no longer had any jurisdiction over these apartments and were unauthorized to issue supplement No. 5 on July 23, 1981.
The court notes that the decontrol resolution adopted by the City of Mount Vernon, as aforesaid, specifically refers to the fact that a landlord would be entitled to the 15% and 5% increase “should the tenant choose to execute such lease providing him with this protection” (emphasis supplied), and subdivision 2-a of section 12 of the Emergency Housing Rent Control Law also provides that such decontrol shall take place “if the landlord and tenant execute a written lease for a term of not less than two years” and “upon the execution of such lease” (emphasis supplied). When plaintiff and the 108 tenants executed their respective two-year leases the maximum rent for their apartments was that rent which had already been fixed and approved by defendants as the result of the subdivision 8 of section 33 (9 NYCRR 2102.3 [b] [8]) “hardship” or “compensatory” increase granted back in November, 1980. While defendants may have had the discretionary power under subdivision 8 of section 33 to “revoke or modify any adjustment granted [t]hereunder if there has been a substantial change in the basis upon which such adjustment was granted” (9 NYCRR 2102.3 [a] [2]; emphasis supplied), defendants have made no factual or evidentiary showing in this record to indicate that there has been any substantial change in the basis upon which such adjustment was granted back in November, 1980 to wit: “Unavoidable increased costs of operation”, or that the 108 new leases *896 were based on an “improper maximum rent”, or that the subdivision 8 of section 33 (9 NYCRR 2102.3 [b] [8]) hardship increase was no longer necessary in the light of the decontrol resolution of the City of Mount Vernon, as urged by defendants in justification of their unilateral revocation of the said subdivision 8 of section 33 hardship increase.
As the matter now stands and, if this court were to uphold the validity of supplement No. 5, it would result in plaintiff receiving 3% less rental per year than it received prior to the decontrol resolution despite the afore-mentioned findings of inequity, unfairness, etc., by the Mount Vernon City Council which prompted the abolition of the old rent control laws, and the language contained in section 12 of the Emergency Housing Rent Control Law which permitted a city such as Mount Vernon to adopt a decontrol resolution. Thus, it would appear that plaintiff is now in a worse position than prior to decontrol due to the promulgation of supplement No. 5.
In sum, then, and in the light of the afore-mentioned, the court finds that it is warranted as a matter of law in denying the defendants’ cross motion, and in directing judgment in favor of the plaintiff declaring that supplement No. 5 to operational bulletin No. 110 dated July 23, 1981, effective June 19, 1981 is illegal, invalid, arbitrary and capricious, and ineffective, insofar as the plaintiff in this action is concerned. The branch of plaintiff’s motion to collect the difference in the rental collected and the rental sought and to deposit same in an escrow account in the county clerk’s office during the pendency of this action is denied.